647 So.2d 576 (1994)
Michael James DETRAZ, Sr., Shawnee Detraz, and Michael James Detraz, Jr., Plaintiffs/Appellees,
v.
HARTFORD ACCIDENT & INDEMNITY CO., Twin City Fire Insurance Co., Benny L. Toland, Drilling Services Supply Co., Marine Drilling Co., Mar-Drill, Inc., and Marine Drilling Management Co., Defendants/Appellants.
No. 94-708.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
*577 Richard J. Putnam Jr., Abbeville, for Michael Detraz, et al.
Jon Daniel Picou, Morgan J. Wells Jr., Metairie, for Hartford Acc. & Indem., et al.
Before KNOLL and WOODARD, JJ., and BERTRAND[*], J. Pro Tem.
LUCIEN C. BERTRAND, Jr., Judge Pro Tem.
This litigation arises out of an auto accident of February 5, 1992, when an 18 wheeler with an "over-height" load struck a bridge and knocked a 4,500-6,000 lb. trash compactor onto the front end of an oncoming Toyota Celica. The occupants of the Celica, Michael Detraz, Sr. and his daughter, Michelle, as well Detraz's wife, Shawnee, and their son Mike, Jr., filed suit for personal injuries against Hartford Accident & Indemnity Co., Twin City Fire Insurance Co., Benny L. Toland (the driver of the 18 wheeler), Drilling Services Supply Co., Marine Drilling Co., Mar-Drill, Inc., and Marine Drilling Management Co.
The trial court granted summary judgment in favor of the plaintiffs on the question of liability and, at plaintiffs' request, severed the claims of Michelle Detraz. The jury returned a verdict in favor of Michael Detraz, Sr., Shawnee Detraz, and Mike, Jr., as follows:

*578
I. MICHAEL DETRAZ, SR.:
 A. Past medical expenses  $ 63,151.46
 B. Future medical expenses  25,000.00
 C. Loss of past income, future income and earning capacity  400,000.00
 D. Past and future physical and mental pain and suffering, disfigurement, and
 physical disability  500,000.00
 E. Past and future loss of enjoyment of life  300,000.00
II. SHAWNEE DETRAZ:
 A. Past and future loss of consortium  $ 80,000.00
III. MICHAEL DETRAZ, JR.
 A. Past and future loss of consortium  $ 25,000.00
 TOTAL $1,393,151.46

The trial court denied defendants' post trial motions for a new trial and remittur. Defendants appeal, arguing that the awards for economic loss and general damages to Michael Detraz, Sr., and loss of consortium to Shawnee and Mike, Jr., are excessive.

FACTS
The accident happened at approximately 7:00 p.m. on February 5, 1992, as Detraz and his daughter Michelle were traveling across the Perry Bridge over the Vermilion River. A truck driven by Benny Toland with a load of three oilfield trash compactors was approaching from the opposite direction when the top of the first compactor struck the bridge's superstructure. This produced a domino effect, with all three compactors being thrown from the truck. Daniel Geoffroy, a truck driver who was directly behind the Detraz vehicle, testified that one compactor struck the hood of the Celica, instantly stopping its progress of approximately 35 mph.
Detraz was immediately transported to Hamilton Hospital in Lafayette where he would remain for the next 32 days. His multiple injuries included a fractured and dislocated left hip, a dislocated right shoulder, with a torn rotator cuff, a deep laceration to the left arm, a fractured sternum, fractured ribs, and abrasions to the head.
Dr. Charles Olivier, an orthopedic surgeon, explained that Detraz's hip injury was the result of great force applied to the knee or thigh while in a sitting position. Dr. Olivier first had to manually replace the hip into the socket, then install a traction pin which remained in place and essentially immobilized Detraz for 30 days. Because the dislocation also involved a fracture, Dr. Olivier had to reopen the hip joint one week later to secure two large bone fragments with screws and to remove some of the smaller fragments from the socket. Detraz remained in traction throughout his hospital stay, entirely confined to his bed. Approximately four months after his release from the hospital, Detraz had to undergo yet another operation on his shoulder to repair the torn rotator cuff.
Although Dr. Olivier was pleased with the results achieved, he acknowledged that Detraz would have restrictions in the use of his arm and leg and could not return to his former job. At trial, Detraz testified that he continues to have weakness, pain and restriction of motion in his right, dominant arm such that he can only lift 10-15 lbs. above his waist, he can no longer cast a fishing rod with his right hand, nor can he perform some simple tasks such as using a screwdriver. As to his leg, he testified that he can only walk ¼ of a mile and stand only 30-40 minutes without pain. Dr. Olivier agreed that these restrictions were consistent with his observations and expectations for Detraz's recovery.
At the time of the accident, Detraz was employed at two physically demanding, outdoor jobs. His primary position was that of a facilities technician for Louisiana Universities Marine Consortium (LUMCON), a state marine research and educational center. Detraz was singlehandedly responsible for the maintenance and operation of LUMCON's satellite facility on Bayou Fearman. This remote facility, located in the marsh and accessible only by boat, presented unique maintenance problems. Any plumbing or painting required the erection of scaffolding tiers that had to be carried through the marsh, and repairs of numerous walkways at *579 the site also required carrying lumber and posts through the marsh. Detraz's job duties also required him to load and unload all research equipment brought to the facility and at times to serve as a crew member on the facility's two research vessels. All physicians who testified at trial agreed that Detraz could no longer continue this employment.
The flexible hours of the LUMCON position permitted him to also work for the Seventh Ward Drainage District, which managed irrigation, drainage and flood control for over 80,000 acres. Detraz was responsible for three water control structures and had to be on call 24 hours a day. His duties included inspecting levee systems, testing water for salt content, opening and closing flood gates and running a mud boat. Before the accident, Detraz could perform each of these strenuous tasks without any assistance. Although he is still employed by the Drainage District, he now needs help from other maintenance employees or from his wife and son to get the job done.
Dr. Michael Heard, an orthopedic surgeon, also examined and treated Detraz at plaintiffs' request. Dr. Heard placed significant restrictions on Detraz's use of his right arm. A functional capacity evaluation advised no overhead lifting of more than 15 lbs. frequently, 35 lbs. occasionally. Dr. Heard also predicted that Detraz would develop post traumatic arthritis and require a total hip replacement within the next 15 years. A physical therapy report indicated that Detraz would be limited in all lifting, carrying, pushing, and pulling tasks. At the defendants' request, Dr. James McDaniel also examined Detraz. Dr. McDaniel acknowledged Detraz's significant injuries and believed that he could benefit from further physical therapy; however, the only restrictions he thought necessary were that Detraz refrain from overhead, jarring sports or work.

ECONOMIC LOSS
Defendants contend that the jury award of $400,000.00 for Detraz's past and future lost wages and lost of earning capacity is excessive. Defendants argue that the jury should not have accepted the testimony of the plaintiffs' economist, Dr. George Rice, because his calculations were based on an inflated annual salary for the LUMCON job. Defendants also contend that the testimony of their vocational rehabilitation expert, Mr. William Stampley, established that Detraz's present earning capacity is greater than his earnings before the accident.
Before a tort victim can recover damages for future loss of wages, he must prove the loss with reasonable certainty; however, such damages need not be proven with mathematical certainty. Futrell v. Scott Truck & Tractor Co., 629 So.2d 449 (La.App. 3rd Cir. 1993), writ denied, 635 So.2d 232 (La.1994).
The amount of lost future income is not solely predicated on the difference between actual earnings before and after a disabling injury. Another factor is the difference between the victim's earning capacity before and after the accident. Bernard v. Royal Ins. Co., 586 So.2d 607 (La. App. 4th Cir.), writ denied 589 So.2d 1058 (La.1991). Earning capacity itself is not necessarily determined by actual loss; damages may be assessed for deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. Folse v. Fakouri, 371 So.2d 1120 (La.1979).
The manifest error rule governs the review of awards for loss of earning capacity. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Veazey v. State Farm Mutual Automobile Ins. Co., 587 So.2d 5 (La.App. 3rd Cir.1991).
At the time of the accident, Detraz was earning $15,400.00 per year with LUMCON and $7,500.00 per year with the Drainage District. He never returned to the LUMCON position after the accident, but he did continue his employment with the Drainage District. Using a work life expectancy of 17.3 years, Dr. Rice calculated that Detraz sustained future losses of $306,609.00 due to his inability to perform the LUMCON job. Defendants contend that Dr. Rice should not have used Detraz's annual salary at the time *580 of the accident because in the two previous years Detraz earned substantially lower amounts because of State budget cuts. The jury was aware of Detraz's reduction in salary but also heard the testimony of Dr. Paul Sammarco, Director of LUMCON, that Detraz would still have his job at his same rate of pay despite any budgetary considerations. We find no error in an award based upon Dr. Rice's calculations.
The record also supports the conclusion that Detraz sustained a significant loss of earning capacity. It is evident that Detraz, with only a high school education, depended upon his great physical strength for his livelihood. In describing Detraz's physical abilities, Steve Rabalais of LUMCON said that Detraz was "his own pair of vice grips," and Joseph Dehart, President of the Drainage District, said that "Mike is like a walking crane." In contrast, Dr. Heard summarized Detraz's physical restrictions after the accident:
What I am basically saying is he can't pick up anything real heavy, he can't do anythingany overhead lifting at all with his right arm, and he can't do anything where he has got to stand on his feet for prolonged periods of time. He can't do any repetitive climbing, stooping, or crawling.
Although Mr. Stampley, the defendants' expert, identified several jobs available to Detraz in the Acadiana area, he admitted that he considered only the restrictions of Dr. McDaniel, which were quite different from those of Dr. Heard.
Detraz also sustained past lost wages of $25,514.00, an amount that is apparently undisputed. When we consider Detraz's past lost wages, the significant restrictions in his physical abilities and the loss of earning capacity, we cannot say that an award of $400,000.00 is an abuse of discretion in this case.

GENERAL DAMAGES
Defendants next argue that the total award for Detraz's general damages, $800,000.00 is excessive. They point to Detraz's excellent recovery and to the absence of other damage awards in this range for these injuries.
Recently, in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the Supreme Court restated the standard for appellate review of general damage awards as follows:
Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. (Emphasis added.)
623 So.2d at 1261.
Although the physicians were pleased with Detraz's recovery, it is clear that his continuing disability has produced drastic changes in his life. Detraz not only depended upon his remarkable physical strength to earn his living; it was also the source of great pleasure in his personal life. He "lived and breathed" to hunt and fish. His wife considered herself a "widow" during hunting season because her husband went everyday. His marksmanship was renowned as "the best shot in Vermilion Parish." Since the accident, however, he has only hunted once, has had difficulty handling his weapon, and when he is fishing he can no longer cast with his right hand.
Detraz also endured a grueling month long hospital stay. He was admitted with severe pain, but he could not be medicated immediately because of possible internal injuries. For 30 days he was literally tied to his bed in traction, unable to walk, bathe, or use the restroom. The removal of the traction pin and the arthrogram which diagnosed his torn rotator cuff were particularly painful. Although *581 the total award of general damages is high, we cannot conclude that it constitutes an abuse of the jury's discretion, when we consider the particular injuries suffered by this particular plaintiff.

LOSS OF CONSORTIUM
Defendants' final assignments of error concern the loss of consortium awards of $80,000.00 to Shawnee and $25,000.00 to Mike, Jr.
Loss of consortium contemplates something more than a loss of general overall happiness, but includes seven components: love and affection, society and companionship, sexual relations, right of performance of material services, right of support, aid and assistance, and felicity. Morris v. Owens-Illinois, Inc., 582 So.2d 1349 (La.App. 2d Cir.), writ denied, 588 So.2d 1119 (La.1991), citing Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985). The elements of a minor child's claim for loss of consortium are essentially the same as the spouse's, without, of course, the sexual component. Higley v. Kramer, 581 So.2d 273 (La.App. 1st Cir.), writ denied, 583 So.2d 483 (La.1991).
The record reveals that Detraz's great athleticism and love of the outdoors also brought great joy to his family. Every job that Detraz had, whether first as a rice farmer and later with LUMCON and the Drainage District, involved outdoor work, usually with Shawnee by his side, either in the rice fields or in the marsh at the LUMCON facility. Although Shawnee in the past voluntarily accompanied Detraz, she now must assist him in his work with the Drainage District in order for him to keep his employment. Detraz also participated in many outdoor activities with his son, Mike, Jr., from the time Mike was a small child through the date of the accident. These activities included hunting, fishing, baseball, football, and 4-H activities. Instead of recreational activities, much of Mike's time with his father is now spent helping him maintain his Drainage District job.
Shawnee described Detraz's personality before the accident as "happy go lucky." Detraz's employers praised his good natured personality and his ability to get along with others. After the accident, however, Mike, Jr., described his father as a man who "gets disgusted easily," who raises his voice for no apparent reason and who does not take into consideration his family's feelings.
Again, after considering the particular injuries suffered, we find no abuse of the jury's discretion in either award, and hence, we need not consider the other jurisprudence. However, in response to defendants' brief, we note that awards in this range have been reported. See Tracy v. Jefferson Dept. of Pub. Works, 523 So.2d 266 (La.App. 5th Cir.), writ denied 530 So.2d 569 (La.1988) ($75,000.00 to spouse affirmed); Morris, supra, ($60,000.00 to spouse awarded). After a careful review of the record, we can find no error in the consortium awards to either Shawnee or Mike, Jr.
For the above reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.