REAVLEY, Circuit Judge:
Five drivers of heavy equipment coal haulers sued the manufacturer for injuries caused by the unreasonably dangerous design of the haulers. Four drivers obtained verdicts and judgments. Three of these have now settled their claims. The manufacturer’s appeal of the judgment for Chris Luker contends that the evidence of causation was insufficient, that expert testimony was improperly admitted, and that the claim was proscribed by limitations. Luker cross appeals the reduction of his damages on the finding of his contributory negligence. Mike Rucker appeals the denial of his claim on the finding of his contributory negligence. The en banc court has vacated the prior panel opinion[1] and now affirms the trial court judgment.

Background,

Euclid, Inc. (Euclid) manufactured the faulted vehicles with the engine under the cab, hence “short nosed.” Our record of their use begins with an Australian mining company in 1977, when the company reported 'to the Australian seller that the drivers at the mine refused to operate the new short nosed hauler because of the roughness of its ride. Both the seller and the mining company engaged engineers to test the new hauler, and their engineers confirmed the complaints of the drivers and described the short nosed haulers as completely unacceptable. One of the engineers, who had himself designed vehicles and had testified for Euclid in Australian litigation, testified in this trial that he had never seen a vehicle with so rough a ride. One of the Australian drivers testified about his experience with both the “long nosed” hauler (ie., engine in front of cab) and the short nosed hauler, saying the latter “kicked up like a wild horse.” The authorized dealer for Euclid products in Australia testified that they could not resolve the rough ride and attributed the problem to the general geometry and weight distribution of the short nosed haulers. Euclid sent its chief engineer to investigate, who found that the short nosed hauler rode four times worse than the long nosed version, vibrated even at low speeds, and demonstrated ride problems.
The short nosed haulers were returned to Euclid and put to use in Texas where they were operated by plaintiffs Luker and Rucker at Texas Utilities Mining Company (TUMCO). Two of the Australian engineers came to Texas and confirmed that the short nosed haulers there gave the same unacceptable vibration demonstrated earlier in Australia.
Plaintiff Luker testified that he worked for thirteen years at TUMCO. During that time, he operated the short nosed hauler almost exclusively. He testified *178 that TUMCO required a physical examination before hiring him as a hauler driver, and despite his brief employment before that time doing construction and oil derrick work, his back was determined to be sound. Luker stated he had never ridden any coal hauler other than the short nosed version and had no basis to compare its ride to that of other coal haulers. He testified that various modifications made to the short nosed haulers did not improve the rough ride during the course of his employment and that his complaints about the ride quality to his supervisors and the authorized dealer were answered with assurances that nothing further could be done. He averred that the complaints of the Australian drivers describing the ride of the short nosed hauler were identical to his experience on the machine.
Plaintiff Rucker worked at TUMCO for ten years and began driving the coal haulers in early 1991. At the end of his employment, he had driven the coal haulers on a partial rotation for three and a quarter years. He testified that during his employment he had never driven any equipment other than the short nosed coal haulers and, occasionally, the water trucks, end dumps, and a back hoe. He agreed with the other witnesses, both those from TUMCO and those from Australia, that the short nosed haulers’ ride was punctuated by back slapping, loping, and vibration. He suffered the back pain that is related to his claim in 1994.
Dr. Samaratunga, a neurosurgeon, testified that he personally rode a short nosed hauler to see what force was experienced by the driver. He pointed out that the widespread damage to the spines of the drivers was unlike that of his other patients, where damage did not occur across all three regions of the spine. Samaratun-ga took the plaintiffs’ histories, reviewed them medical records, and examined and treated them. He testified that plaintiff Luker might require surgery, and that the rough ride of the coal hauler was a contributing factor to the damage. He testified that plaintiff Rucker suffered injury to his middle and lower back and may require surgery as well as extensive physical therapy, but that he had the least amount of damage of the five plaintiffs.
Dr. Aprill, a radiologist, testified to the uncommon distribution of endplate fractures among the coal haulers’ magnetic resonance imaging scans (MRIs) compared to other back patients who, like these hauler operators, smoked, were overweight, had suffered back trauma from accidents, and were the same age. He explained that the endplate is at the end of the vertabrae at the top and bottom of each disc. These cartilaginous plates fracture when a vertical load is applied to the disc and the disc presses against the endplate. Endplate cracks change the environment in the discs, leading to disc degeneration, which makes the disc vulnerable to compression injury. As such, fractured endplates are the hallmark of compression failure. He noted further that it is well known and supported by medical literature that whole body vibrations cause fracturing of the endplates. The more endplates that are cracked, the more discs will degenerate, and the more likely it becomes that one or more of the degenerated discs will fail and produce back pain. Aprill then- testified that the MRIs of the hauler operators evidenced the same fingerprint, ie., repeated vertical compression failure in both the dorsal and lumbar regions, a pattern not found in MRIs of non-hauler back pain patients. Specifically, Aprill testified that the MRIs of plaintiff Luker demonstrated multiple cracks in the endplates in the dorsal spine, and cracks and degenerative disease and disc herniation in the lumbar spine, which correlated with Luker’s description of his pain symptoms in the dorsal and lumbar regions of his back. Similarly, the MRIs of plaintiff Rucker showed that he had suffered multiple endplate cracks in the dorsal spine and three abnormalities in the lumbar spine, which also correlated to his pain symptoms. Aprill *179 identified this pattern in all five hauler drivers.
The jury found Luker’s damages to be $900,000 and, with the assessment of his fault at thirty percent, the final judgment awarded him $630,000. Because Rucker was found to be seventy percent at fault, he recovered nothing despite his damages of $400,000.

Proof of Causation

The plaintiffs’ burden was to prove that the roughness of the ride of the coal haulers was probably a contributing cause of their back injuries, without which those injuries would not have been suffered. We review “the evidence in its strongest light in favor” of the plaintiffs, giving them “the advantage of every fair and reasonable inference which the evidence justifies.”[2]
The circumstantial evidence of the relation between the rough ride of the coal haulers and plaintiffs’ back injuries was more than reasonable; it was compelling. The doctors and engineers testified to the jolts on the bodies of the drivers, causing compression upon their spines. The MRI pictures of their spines demonstrated cumulative, repetitive compression fractures, according to the neurosurgeon and radiologist. The radiologist exhibited MRIs of the five plaintiffs as well as eighty-five other drivers of the short nosed haulers and explained how the incidence and location of multiple fractures demonstrated extensive and prolonged trauma. He compared those MRIs with other patients with back injuries but who lacked the same multiple fractures, or what he termed the “fingerprint” of the occupation of the former. One of the Australian engineers referred to Clinical Biomechanics of the Spine,[3] which provided that vibrations of the type and level experienced in the short nosed haulers are known to produce spinal damage.[4]

Expert Witness Evidence

The radiologist, Dr. Aprill, and the neurosurgeon, Dr. Samaratunga, were qualified to give their opinion on the readings of the MRIs and of the injuries suffered by Luker and Rucker. Euclid complains of Aprill’s opinion that the short nosed coal haulers caused plaintiffs’ injuries, but Aprill expressly said that he claimed no knowledge of the coal haulers and only testified about the compression fractures shown on the MRIs. He did testify that all of the 90 MRIs demonstrated a common compression injury. Only when Euclid’s lawyer asked him if he did not think driving the hauler caused the injuries did he agree with that conclusion inasmuch as driving the haulers was the common occupation.
Euclid also argues that Aprill’s testimony about his study of the comparison between the MRIs of the drivers and the MRIs of the other patients lacked the support of the Daubert criteria.[5] Aprill did describe his ongoing study of intraver-tibral endplate fractures in those terms, but the evidence given to this jury was only illustrative of his findings from the two sets of MRIs. The “study” was nothing more than a comparison of otherwise admissible findings or exhibits. The district judge did not abuse his discretion in the admission of this expert testimony.[6]

*180
Statute of Limitations

The MRIs of the endplate fractures objectively proved the plaintiffs’ cumulative compression damage, but such damage is not otherwise symptomatic. Accordingly, it was the kind of injury not likely to be discovered within the prescribed two-year limitations period,[7] despite faithful diligence;[8] the plaintiffs had no reason to suspect that they were being injured by the vibration.[9] In light of the evidence on ride quality marshaled by the plaintiffs in this extensive record, it cannot be disputed that these short nosed haulers had ride problems, which is proven by direct, physical evidence of their vibration characteristics collected by accelerometer, testified to by multiple witnesses, both expert and lay, and admitted by Euclid’s chief engineer and the dealer in Australia, who was authorized to sell Euclid equipment at that time. As to the injury, Luker brought his claim for his compression damage shortly after it was diagnosed, which was made as soon as was reasonably possible given the nature of this injury. As such, Luker’s claims were filed within two years of discovery in accordance with the Texas discovery rule.[10]

Proportionate Responsibility

The record supports the jury’s determination that some negligence of Luker and Rucker aggravated their injuries for the reasons stated in the panel opinion.
AFFIRMED.

. See Bartley v. Euclid, Inc., 158 F.3d 261 (5th Cir.1998), vacated, 169 F.3d 215 (5th Cir.1999).

. Junes & Laughlin Steel Corp. v. Matherne, 348 F.2d 394, 397-98 (5th Cir.1965).

. Augustus A. White & Manohar M. Panjabi, Clinical Biomechanics of the Spine (2d ed. 1990).

. Interestingly, although Euclid’s counsel admitted that this witness had an "impressive resume,” when counsel went on to fault the witness lor being no doctor or statistician and having published no studies, the engineer replied that “in Australia, experience and diligent study count[] along with formal qualifications.”

. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593-95, 113 S.Ct. 2786, 2796-97, 125 L.Ed.2d 469 (1993).

. See General Elec. Co. v. Joiner, 522 U.S. 136, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997).

. Tex. Civ. Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986 & Supp.1999).

. See S.V. v. R.V., 933 S.W.2d 1, 6-7 (Tex.1996).

. Id. at 8.

.Judge DeMoss would extend the Texas holdings in the cases of misdiagnosis and repressed memory to the present case. We see no basis for this extension in the Texas decisions. Furthermore, we note that he has to concede that the prior injury actually occurred or else there would be no limitations bar.