**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 02-30035
Summary Calendar
_____

R.H. CROMWELL,

Plaintiff-Appellee-Cross-Appellant

versus

WAL-MART STORES, INC., etc., ET AL,

Defendants

WAL-MART STORES, INC., doing business as Sam's Wholesale Club;
KLI, INC., formerly known as Keller Ladders, Inc.,

Defendants-Appellants-Cross-Appellees

_____

Appeals from the United States District Court
For the Western District of Louisiana, Monroe Division
(No. 99-0480)
_____

August 9, 2002

Before HIGGINBOTHAM, SMITH and CLEMENT, Circuit Judges.

PER CURIAM:[*]

A jury awarded plaintiff R.H. Cromwell approximately $200,000 in damages for injuries he suffered in a fall from a stepladder manufactured by defendant KLI, Inc. and sold by defendant Wal-Mart Stores, Inc. The District Court granted defendants' motion for a remittitur, reducing the award by almost half, or in the

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

alternative, new trial. In this appeal, defendants challenge the trial court's decision to admit testimony from plaintiff's expert and the sufficiency of the evidence at trial. Plaintiff challenges the remittitur and the sufficiency of the evidence supporting his comparative fault. We find no reversible error on either challenge and AFFIRM for the foregoing reasons.

## I. Background Facts and Procedural History

While welding a shed from atop a fiberglass stepladder on February 12, 1998, Cromwell fell to the ground, became entangled in the stepladder, and injured his shoulder. A rivet attaching a spreader bar to the corresponding front rail had torn through the rail. He brought this lawsuit against defendants, alleging that the ladder was defectively designed. Cromwell's expert, mechanical engineer Dr. Leighton Sisson, submitted a report and testified that the ladder twisted in a counter-clockwise direction (viewed from above). In other words, the rear rails shifted with respect to the front rails, a phenomenon known as "racking." Sisson testified that the racking was caused by a defective joint connecting the spreader bar to the front rail; that the portion of the front rail connected to the joint was bearing too much weight; and that the defect could be remedied by either fitting the joint with a larger washer, to spread to load, or by thickening the rail.

The jury found that plaintiff's injuries warranted $300,000 in general damages and $27,185.47 in medical expenses. But, they also determined that Cromwell was 35 per cent at fault and reduced his

award accordingly. The trial judge ordered a remittitur, lowering the general damages amount to $150,000, or in the alternative, a new trial. Plaintiff did not respond and the remittitur took effect.

## II. Expert Testimony

Expert opinion testimony is admissible if it is helpful to the jury in understanding the evidence or determining a fact in issue. FED. R. EVID. 702. Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Phamaceuticals, Inc.*, 509 U.S. 579 (1993) establish that federal trial judges are to serve as gatekeepers by excluding the testimony of experts offering "junk science." In particular, the trial judge must consider whether "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.

We reverse the admission of expert testimony only for abuse of discretion. *See Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999). "A trial court's ruling regarding admissibility of expert testimony is protected by an ambit of discretion and must be sustained unless manifestly erroneous." *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1317 (5th Cir. 1995) (quoting *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1109 (5th Cir. 1991)).

Appellants assert that it was an abuse of discretion to qualify Sisson as an expert because he had never worked in the ladder-making industry and had never published research on ladders or ladder joints. The trial judge concluded that Sisson, an engineering consultant and former engineering professor, was qualified to evaluate the relatively simple structure of a stepladder. Sisson testified that he had designed mechanical components far more complicated than stepladders. Qualifying Sisson as an expert was not an abuse of discretion.

Appellants argue that it was abuse of discretion to admit Sisson's testimony, over objection, because Sisson did not perform any tests on the accident ladder (because it was broken) nor other ladders of the same make. Accordingly, he could not have known whether the force of Cromwell's weight could have cause the break, or whether it must have been some other, greater force. In other words, appellants argue that Sisson improperly "assumed that the bar rivet was torn through the rail *while Cromwell was standing on the ladder*." However, experts are permitted to assume the underlying facts that form the basis for their opinions. *See Daubert*, 509 U.S. at 592 ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."). Sisson's report states that his conclusions are based on Cromwell's own statements, indicating, quite properly, that his conclusions assume that Cromwell was atop

4

the ladder when it fell–– a fact the jury apparently believed from the other testimony.

Appellants also assert that it was an abuse of discretion to admit the testimony of Sisson, over objection, once it became known that Cromwell had changed his account of the facts. At trial, Cromwell gave a different account of his position on the ladder than he had given at his deposition. Cromwell admitted his reassessment, and defendants' counsel exploited that fact on cross-examination. Appellants assert that Cromwell's story-change triggered a duty, under Federal Rule of Civil Procedure 26(e), to amend Sisson's report; and since it never was amended, his testimony should have been excluded, as required by Federal Rule of Civil Procedure 37(c). Review of the record reveals that Sisson's assessment that the stepladder was defective did not depend on the exact position of the defendant or the stepladder. His report and testimony were consistent in concluding simply that excessive racking had occurred. It was up to the jury to determine, looking to other evidence, whether Cromwell was on the ladder, and whether he had put himself in a dangerous position. We find no abuse of discretion in the trial court's overruling defendants' objections to Sisson's testimony.

## III. Sufficiency of the Evidence

Appellants argue that there was insufficient evidence to support the jury's award, and that the trial judge should have granted a post-trial judgement as a matter of law, or a new trial.

We review a sufficiency of the evidence challenge for abuse of discretion. *Dixon v. Int'l Harvester Co.*, 754 F.2d 572, 586 (5th Cir. 1985). "We review 'the evidence in its strongest light in favor' of the plaintiffs, giving them 'the advantage of every fair and reasonable inference which the evidence justifies.'" *See Bartley v. Euclid, Inc.*, 180 F.3d 175, 179 (5th Cir. 1999) (en banc) (citations omitted).

It was reasonable for the jury to believe Cromwell's testimony that the ladder buckled from under him. And it was also reasonable for the jury to believe Cromwell's expert, and disbelieve defendants' expert, that the ladder was defective and could have been made more safe by simply adding a larger washer. *See* LA. REV. STAT. § 9:2800.56. The evidence was sufficient to support the jury's determination.

Cromwell asserts that there was insufficient evidence to support the jury's decision to apportion him 35 per cent of the fault. However, he conceded at trial that while on the ladder he was "overreaching" and in an "unsafe position." The evidence was sufficient to support his comparative fault.

## IV. Remittitur

The decision to grant a remittitur is in the sound discretion of the trial judge and is reviewed for abuse of discretion. *See Denton v. Morgan*, 136 F.3d 1038, 1046 (5th Cir. 1998). Under Louisiana law, "much discretion is left to the... jury" in

6

determining general damages. LA. CIV. CODE ART. 2324.1. "Only after a determination that the trier of fact has abused its 'much discretion' is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion." *See Duncan v. Kansas City Southern Ry. Co.*, 773 So.2d 670, 682 (La. 2000) (citation omitted). In sum, we must determine whether the trial court abused *its* discretion by determining that the members of the jury abused *their* discretion. We conclude that it did not.

Cromwell cites *Detraz v. Hartford Accident & Indemnity Co.*, 647 So.2d 576 (La. Ct. App. 1994), in which an $800,000 general damages award was upheld, in part because of Detraz' loss of enjoyment of life. The analogy to *Detraz* is not persuasive, however, because the large award was attributable to Detraz' severe injuries: "a fractured and dislocated left hip, a dislocated right shoulder, with a torn rotator cuff, a deep laceration to the left arm, a fractured sternum, fractured ribs, and abrasions to the head." *Id*. at 578. Detraz endured a "grueling month long hospital stay" and permanent impairments. *Id*. at 580.

The trial judge discovered that the highest award for a shoulder injury comparable to Cromwell's was $150,000, *see J.B. Saucier v. Players Lake Charles*, 751 So.2d 312, 320 (La. Ct. App. 2000), and reduced Cromwell's award accordingly. This comports with the Louisiana Supreme Court's instructions to look to prior awards

7

for the outer bounds of jury discretion, *see Duncan* 773 So.2d at 682, and was not an abuse of the trial court's discretion.

## V. Conclusion

The judgment of the district court is AFFIRMED.