COLBERT COUNTY HOSPITAL BOARD, a corporation, d/b/a Helen Keller Memorial Hospital, et al., Plaintiffs-Appellants,

v.

BELLEFONTE INSURANCE COMPANY, et al., Defendants-Appellees.

No. 83–7050.

United States Court of Appeals, Eleventh Circuit.

Feb. 24, 1984.

---

1. The *General Electric* opinion is binding in this case. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc).

2. Any other result would leave the subcontractor without a means of recovery because lack of privity (as well as sovereign immunity) bars a suit against the government. *See, e.g., United Electric Corp. v. United States,* 227 Ct.Cl. 236, 647 F.2d 1082 (Ct.Cl.), *cert. denied,* 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981). To hold otherwise would certainly not further the purpose of the Miller Act, which Congress enacted to protect subcontractors. *See, e.g., United States ex rel. T/N Plumbing & Heating Corp. v. Fryd Const. Corp.,* 423 F.2d 980, 984 (5th Cir.1970).

Braxton W. Ashe, Almon, McAlister, Ashe, Baccus & Smith, Tuscumbia, Ala., for plaintiffs-appellants.

John S. Key, Eyster, Eyster, Key & Tubb, Decatur, Ala., for defendants-appellees.

Before JOHNSON and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

In this appeal we are asked to construe an insurance policy issued by defendant-appellee Bellefonte Insurance Co. ("Bellefonte") to plaintiffs-appellants Colbert County Hospital Board ("Board"), doing business as Helen Keller Memorial Hospital ("Hospital"). The sole issue presented is whether a lawsuit filed against the Board by a former patient at the Hospital presented only one "claim" under the terms of the insurance policy, or three "claims." We hold that the district court erred when it interpreted the applicable law to require that only one "claim" was presented. Therefore we reverse.

## I. BACKGROUND

The facts of this case are undisputed. On three occasions, November 13–22, 1975, December 2–20, 1975, and February 5–13, 1976, a patient, Mrs. Martin, was admitted to the Hospital for surgery to remove fat from her body. On each of those occasions the same doctor treated Martin. Each operation left very prominent, noticeable scars—the first operation resulted in a long scar across Martin's abdomen and the removal of her navel; the second resulted in a scar from her left shoulder blade to her left hip; and the third left a scar from her shoulder blade to her hip on her right side.

Martin subsequently filed suit against the Hospital in the United States District Court for the Northern District of Alabama, alleging that on each of her admissions to the Hospital the Hospital breached its contract with her, negligently allowed an incompetent physician to operate on her, and conspired with others to commit medical malpractice on her. The jury returned a verdict of $225,000 for Martin, which was set aside on a motion for new trial filed by the Hospital. Prior to the second trial, however, the case was settled for $185,000. Martin's doctor paid $25,000, Bellefonte paid $100,000, which it claimed represented the limit of its liability under its policy with the Hospital, and the Hospital satisfied the balance of $60,000, but under protest that Bellefonte should also make that payment under its insurance policy.

This lawsuit followed in the United States District Court for the Northern District of Alabama to determine the limits of coverage under the insurance policy issued to the Hospital by Bellefonte. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. At trial the Hospital contended that Martin's lawsuit presented three "claims" against the Hospital—one for each of her operations—and that therefore the settlement of those claims fell within the $300,000 limit of aggregate liability under the insurance policy. Bellefonte argued that Martin's lawsuit present-

ed only one "claim," for which the policy limit was $100,000. At the close of the Hospital's case the district court agreed with Bellefonte and granted its motion for a directed verdict. The Hospital appeals.

## II. DISCUSSION

The parties agree that the outcome of this appeal turns on the proper construction of the insurance policy provision entitled "Coverage O, Hospital Professional Liability Insurance:"

Limits of Liability:

100 thousand dollars each claim.

300 thousand dollars aggregate.

\* \* \* \* \* \*

## III. LIMITS OF LIABILITY

Regardless of the number of insureds under this insurance the company's liability is limited as follows:

The limit of liability stated in the schedule as applicable to "each claim" is the limit of the company's liability for all damages because of each claim or suit covered hereby. The limit of liability stated in the schedule as "aggregate" is, subject to the above provision respecting "each claim," the total limit of the company's liability hereunder for all damages.

The key issue in interpreting this provision is the meaning of "claim." Nowhere in the policy is "claim" defined. The word "claim" does not lend itself to easy definition, nor does it mean the same thing to all people. *See, e.g., Smith v. Benedict,* 279 F.2d 211, 213 (7th Cir.1960) (equating "claim" as used in Fed.R.Civ.P. 54(b) with "cause of action"); *Downey v. Dairymen's League Co-op Ass'n,* 149 F.Supp. 615, 618 (D.N.J.1957) ("claim" is a legal right, the invasion of which by defendant has caused damage to the plaintiff); *Steele v. State,* 159 Ala. 9, 48 So. 673, 674 (Ala.1909) ("the word 'claim' signifies a right to claim, a just title to something in the possession or at the

disposal of another"). Despite the difficulty in defining claim, Bellefonte implies that the word, as used in its insurance policy, means a single lawsuit, or perhaps a single lawsuit by a single plaintiff. In the provision in question, however, "claim" is used in the disjunctive with "suit," indicating that they do not mean the same thing. *Cf. St. Paul Fire & Marine Ins. Co. v. Hawaiian Ins. & Guar. Co.,* 2 Haw.App. 595, 637 P.2d 1146, 1147 (1981). Therefore, we cannot accept the argument that just because Martin filed only one suit against the Hospital, she presented only one claim.

Having rejected the insurance company's proposed definition of claim, we find it unnecessary to adopt a particular definition. Under the peculiar facts of this case, we believe that the Hospital must prevail under most reasonable interpretations of claim. Clearly, Martin could have filed a suit for only one or two of the three operations she underwent at the Hospital. Or, she could have filed three separate suits for the three operations. Of course, the preferred practice in federal court is to consolidate as many "claims" as possible against a particular party into a single suit. *See* Fed.R.Civ.P. 18(a). Martin's complaint against the Hospital, introduced into evidence at trial, supports the Hospital's assertion that Martin had three separate and distinct claims in her lawsuit. Under each theory of recovery advanced by Martin she alleges in separate paragraphs the facts of each of her three admissions to the Hospital, claiming separate injuries from each admission. Thus, the Hospital could have been found liable at trial for only one or two of Martin's admissions, rather than all three.[1]

Our approach in this case is consistent with the only authority on point that the parties found. In *St. Paul Fire & Marine Ins. Co. v. Hawaiian Ins. & Guaranty Co.,* 2 Haw.App. 595, 637 P.2d 1146 (1981), the Hawaii Intermediate Court of Appeals construed an insurance policy provision similar

---

1. In some cases a factual question might arise over whether an insured was found liable for all, or only some, of his multiple claims consolidated for one trial. In the case at hand, how-

ever, the Hospital settled with Martin in return for a release of *all* claims. Therefore, we need not remand the case for a determination of which claims were covered.

to that at issue here.[2] The *St. Paul* court had to determine whether one claim or three claims were asserted by a patient's estate, which filed two lawsuits (consolidated for trial) alleging that on three separate occasions the patient was negligently administered Halothane anesthesia, and that each administration of the anesthesia contributed to his death. Two of the administrations were performed by one doctor, and the other by a second doctor. The two doctors practiced with a third doctor as "Medical Anesthesia," and the three were insured together by the same insurance company. The appellant, St. Paul Fire and Marine Insurance Co., argued that only one claim was presented, but the court disagreed and held that three "claims," which resulted in two suits, were terminated in one settlement. 2 Haw.App. at 596, 637 P.2d at 1147. Bellefonte attempts to distinguish *St. Paul* on the ground that two different physicians treated the patient, whereas here the same doctor performed surgery on Martin each time. But Bellefonte's distinction fails to explain why treatment by two doctors in *St. Paul* resulted in the court finding three claims. Obviously, in *St. Paul* two claims were presented against the doctor who administered anesthesia twice, just as here three claims were presented against the doctor who operated thrice.

Bellefonte also cites a number of cases to show that *St. Paul* goes against the great weight of authority in the country and is "bad law." Those cases, however, simply draw a distinction between "claim" and "occurrence," and show that a single "occurrence" often gives rise to several "claims." For example, in *Combined Communications Corp. v. Seaboard Surety Co.,* 641 F.2d 743 (9th Cir.1981), Combined Communications Corp. ("CCC") broadcast allegedly libelous matter on one occasion resulting in multiple claims by multiple plaintiffs. Thus, one "occurrence" caused many suits. The issue in *Combined Communications* was whether the $5,000 deductible "for each claim" provided for in the insurance policy covering CCC applied to each claim filed by a plaintiff as a result of the one broadcast, or whether the deductible applied only once. The court of appeals ruled that the deductible applied to each claim. Bellefonte attempts to argue from *Combined Communications* and other similar cases that the three "occurrences" of surgery upon Martin presented only one claim. The argument is a non-sequitur. Certainly it is possible for several occurrences to result in a single claim, but we fail to see how that is the case here. Even if the three operations had been performed on Martin on the same day, without a break, she could present three "claims" based on three separate and distinct acts during the series of operations if each act would, by itself, suffice to place liability on the Hospital.

Even if we found that Bellefonte's insurance provision did not clearly compel the conclusion that three claims were presented against the Hospital by Martin, we would conclude that the provision was, at best, ambiguous. Under Alabama law, if an insurance contract provision is subject to more than one interpretation, it should be construed in favor of coverage, and against the insurer. *See Miles v. St. Paul Fire & Marine Ins. Co.,* 381 So.2d 13, 14 (Ala.1980); *see also St. Paul,* 2 Haw.App. at 596, 637 P.2d at 1147 (insurance contract is contract of adhesion, to be construed liberally in favor of insured and against insurer). Moreover, "if doubt arises as to the limitation of liability, or to matters subsequent to the attaching of the liability, the policy provisions are to be construed most favorably toward the insured." *Miller v. Liberty National Life Ins. Co.,* 243 Ala. 250, 9 So.2d

---

**2.** The provision at issue in *St. Paul* states:

The limit of liability stated in the schedule as applicable to "each claim" is the limit of the company's liability for all damages because of each claim or suit covered hereby. The limit of liability stated in the schedule as "aggregate" is, subject to the above provision respecting "each claim", the total limit of the company's liability under this coverage and under this policy for all damages. The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

132, 134 (1942). Thus, we would still rule in favor of the Hospital.

The judgment is REVERSED and RE-MANDED for entry of judgment in favor of appellants.