MAXIM MANUFACTURING
CORPORATION,
Plaintiff,

v.

ALLIANCE GENERAL INSURANCE
COMPANY, Defendant.

Civ. A. No. 3:94CV736(L)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

Nov. 30, 1995.

Joshua J. Weiver, Joshua J. Weiner, Atty., Jackson, MS, for Plaintiff.

C. York Craig, Jr., Michael T. Cawkins, Whitney B. Byars, Watkins, Ludlam & Stennis, Jackson, MS, for Defendant.

*MEMORANDUM OPINION
AND ORDER*

TOM S. LEE, District Judge.

This cause is before the court on cross motions of plaintiff Maxim Manufacturing Corporation (Maxim) and defendant Alliance Insurance Group, Inc. (Alliance) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Each party has responded to the other's motion and the court, having considered the memoranda of authorities submitted by the parties, concludes, for the reasons that follow, that judgment should be entered for Alliance.

The facts giving rise to this lawsuit are undisputed. Alliance issued Maxim a "Completed Operations and Products Liability" policy containing a self-insured retention endorsement, which the parties note is analogous to a deductible. That endorsement provided that the insurer, Alliance, would only be liable for compensatory damages and legal expenses in excess of $100,000 per claim. Specifically, the language of the endorsement was: "The retention amount will apply on an each claim basis regardless of the number of claims arising out of one occurrence."

On December 8, 1988, two minor children were killed in a fire in South Carolina. The minors' father, Walter Andrews, as personal representative of the children's estates, instituted a wrongful death suit against Maxim charging that the fire which claimed the lives of the children was caused by a defective kerosene heater distributed by Maxim. The case was ultimately tried and resulted in a judgment for Maxim. While the appeal was pending, the case was settled. Thereafter, Alliance, which had furnished Maxim's de-

fense, sought $200,000 from Maxim, contending that in accordance with the self-insured retention provision, it was entitled to receive $200,000—$100,000 for each minor's claim. Maxim, taking the position that it was liable only for $100,000, filed this declaratory judgment action asking the court to declare that the wrongful death suit filed against it constituted one claim under the policy, rather than two.

The sole issue for decision by this court is whether the South Carolina litigation involved one claim or two claims for purposes of the self-insured retention endorsement. The parties agree that the fire was one occurrence. And they agree, as they must, that the self-insured retention endorsement applies to each "claim" arising from that occurrence. But while Maxim maintains that the suit filed on behalf of the children was a single claim for purposes of the self-insured retention endorsement, Alliance argues that the suit represented two claims, one on behalf of each child.

As Alliance points out, one of the most frequently cited cases involving this issue is *Lamberton v. Travelers Indemnity Co.*, 325 A.2d 104 (Del.Super.Ct.1974), in which a bridge designed and constructed by the insured collapsed, injuring or killing several persons. The policy there provided that the "liability of the [insurer] with respect to [e]ach claim shall be only for the amount of each claim that is in excess of the deductible amount stated in the declarations." *Lamberton*, 325 A.2d at 105. The court, after distinguishing between "claim" and "occurrence," held that the term "claim" was unambiguous, stating:

> It seems an unwarranted distortion of this fundamental meaning [of claim] to argue, as plaintiffs argue, that a claim refers to an incident or accident which gives rise to various claims under the terms of the policy.

*Id.* The court concluded that although the various plaintiffs brought their individual "claims" in one suit, the "occurrence" gave rise to the "claims" of each of those harmed.

A similar result was reached in *Colbert County Hospital Board v. Bellefonte Insurance Co.*, 725 F.2d 651 (11th Cir.1984). In that case, the plaintiff filed one lawsuit against the insured Hospital for injuries resulting from three separate surgeries which the plaintiff alleged had been negligently performed. For purposes of determining whether the $100,000 per claim limit of liability in the Hospital's liability policy applied, the court concluded that although the plaintiff had filed only one lawsuit, she had asserted three claims. In so doing, the court specifically rejected an argument, similar to that advanced by Maxim in the case at bar, that the word "claim," in that context, could reasonably be interpreted to mean "a single lawsuit, or perhaps a lawsuit by a single plaintiff." *Id.* at 653. The court recognized that the policy did not define the term "claim," and further acknowledged that "the word 'claim' does not lend itself to easy definition, nor does it mean the same thing to all people." *Id.* But that fact did not lead the court to find the term ambiguous. To the contrary, the court found that "the Hospital must prevail under most reasonable interpretations of claim." *Id.* The court reasoned that three claims were involved, for [c]learly, [the plaintiff] could have filed a suit for only one or two of the operations she underwent at the Hospital. Or, she could have "filed three separate suits for the three operations." *Id.* See also *Combined Communications Corp. v. Seaboard Surety Co.*, 641 F.2d 743 (9th Cir.1981) (separate $5000 per claim deductible applied to each claim asserted by each of a number of plaintiffs in three separate actions); *General Casualty v. Diversified Painting Service, Inc.*, 603 N.E.2d 1389 (Ind.Ct.App.1992) (term "claim," even though not defined in the policy, unambiguously applied to claims by owners of each of a number of vehicles damaged by insured during spray painting operation).

The court finds the reasoning of these cases persuasive and concludes that the term "claim," at least as applied to the facts herein presented, is unambiguous.[1] In the case at

---

1. There is conflicting evidence regarding the parties', and most pertinently, Alliance's treatment of the lawsuit as a claim or claims. For example, while Alliance initially notified Maxim that "the retention amount applies to each claimant and as you know, there are two claimants in this

bar, a right of action accrued to the estate of each minor decedent. And each estate, possessing a cause of action, obviously could have proceeded in a separate action against Maxim. But Walter Andrews, in his capacities as the personal representative of each of his deceased children's estates, chose to file one lawsuit. That he did so was merely a procedural choice, not a substantive one. The plain fact is, the claims were asserted *on behalf of* the estates of two separate individuals, each possessing its own cause of action.[2] And that fact is not altered by the fact that both estates were represented by the same person.

Maxim complains that adoption of Alliance's interpretation of the term "claim" in the self-insured retention endorsement would effectively deny Maxim the full benefit of the insurance coverage it has purchased. It points out that since the policy provides a $500,000 liability limit per occurrence, then Alliance's interpretation, if five children perished in a fire and their father filed one lawsuit for their losses, five $100,000 deductibles would be triggered with the result that no coverage would be available to the insured. Indeed, under Alliance's interpretation—and the court's—that is precisely what would occur. But Maxim would presumably agree that if five unrelated children perished in a fire, and the five children's representatives joined together in a single lawsuit, five separate claims would be involved and hence five deductibles would be triggered, effectively leaving the insured with no coverage. While Maxim may view such a result as harsh and absurd, that would be the only result the court could reach under any reasonable interpretation of the word "claim." And in the court's opinion, there is simply no logical basis for distinguishing between claims on behalf of the estates of related individuals and those of unrelated persons.

The court recognizes, of course, that the damages recoverable in a wrongful death suit are largely intended to compensate the parents' or other family member's loss resulting from the death. *See Clark v. Ross,* 284 S.C. 543, 567, 328 S.E.2d 91, 106 (S.C.1985) (apart from pecuniary loss, beneficiaries permitted to recover damages for mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship and deprivation of use and comfort of decedent's society). Nevertheless, the claim is asserted on behalf of the decedent's estate and damages are determined by reference to the pecuniary loss caused by the death of the *decedent,* and the loss of companionship and deprivation of use and comfort of the *decedent's* society. That is, the claim is for the damages caused by the loss of the relationship with the decedent. Thus, clearly a separate claim arose on account of the death of each child.

For the foregoing reasons, the court concludes that two claims were presented against Maxim and that consequently, two self-insured retentions were triggered. Accordingly, it is ordered that Maxim's motion for summary judgment is denied, and it is further ordered that Alliance's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

particular accident," subsequent correspondence from the law firm retained to represent Maxim purported to confirm that the first $100,000 (not the first $200,000) would be paid by Maxim. But what may arguably be viewed as contradictions in the evidence in this regard do not preclude the court from entering judgment for Alliance, for the parties' arguably ambiguous treatment of the claims during the pendency of the South Carolina suit does not render the term "claim," as used in the policy, ambiguous.

**2.** It is true, as Maxim points out, that the two deceased children were neither "claimants" nor "plaintiffs." But if that were relevant, it would follow that there could never be a claim asserted for an occurrence that results in a death, for the decedent himself is never the claimant or the plaintiff. Rather, as here, his estate or representative acts as the claimant, and potentially as a plaintiff, on his behalf.