692 So.2d 490 (1997)
Samuel B. TRAHAN, et al., Plaintiff-Appellants/Appellees,
v.
SAVAGE INDUSTRIES, INC., et al., Defendant-Appellant/Appellee.
No. 96-1239.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1997.
Rehearing Denied May 20, 1997.
*492 Roger Chadwick Edwards, Jr., Abbeville, for Samuel Trahan, et al.
David Ross Frohn, Lake Charles, for Savage Industries, Inc., et al.
Before DECUIR, AMY and SULLIVAN, JJ.
DECUIR, Judge.
This is a pre-Act products liability action arising out of an unintended discharge of a.410 gauge shotgun in a duck blind. Plaintiffs, Samuel Trahan, his wife, and their minor children filed suit seeking damages for personal injury and loss of consortium respectively. Original defendants were, Anthony Rizutto (owner of the land where the duck blind was located), State Farm (Rizutto's insurer) *493 and the manufacturer of the shotgun, Savage Industries, Inc. Savage became bankrupt in December 1988. Plaintiffs obtained permission from the bankruptcy court to proceed with their claims, but only against available insurance afforded Savage through Sporting Arms Insurance Ltd. (SAIL). Thereafter, plaintiffs settled with Rizutto and State Farm.

THE SHOTGUN
The product in this case is a Stevens Model 940-A, .410 gauge single shot shotgun first manufactured in the early 1960's. The shotgun has an exposed hammer and possesses two hammer positions, full cock ("fire") and full down ("safe"). The shotgun uses the firing pin assembly to push the hammer back into the safe position after firing, thus the firing pin is virtually always in contact with the hammer. In addition, the shotgun had a trigger pin that was too small in diameter rendering it so weak that a light blow to the hammer would deform the pin, allowing "play" in the integrity of the safety. The bent pin would move the orientation of the trigger away from the safety notch on the bottom of the hammer. This "play" was significant enough that the hammer was free to rotate forward to the point where the trigger engaged the safety notch only after the firing pin had protruded into the breech enough to fire a shell.
The shotgun was purchased by Samuel Trahan's father in the early 1960's when Samuel was about ten years old. The older Trahan gave the gun to Samuel as a gift. In late 1964 or early 1965, Savage became aware of the defect when it received a letter from a doctor, whose son had been killed by the shotgun, returning the shotgun and inquiring as to why the accident occurred. Defendant's expert, Robert Greenleaf, was a design engineer for Savage who examined the shotgun that killed the doctor's son. He testified that upon dismantling the shotgun, he immediately noticed that the trigger pin was too small. The pin was tested, and it was determined that the pin could not withstand the stress for which it was designed. The defect was subsequently altered twice, but no effort was made to notify previous purchasers or to recall the shotguns.

THE ACCIDENT
On November 15, 1987, Trahan and his son Nicholas were hunting in a duck blind with Henry Redlich and his son Jody. The duck blind was a sunken four foot by eight foot arrangement tapering to approximately two and a half feet on top. The boys were in the middle between the adults. Two ducks were shot, and the boys went to retrieve the birds. Neither boy had fired their guns. Nicholas was using the shotgun at issue in this case. The guns were lying across the top of the blind. Trahan reached over the gun laid across the blind to lift his son out so that he might retrieve the birds. As he did so, someone hit the stock and knocked the gun down. The gun fell from its perch and landed between Redlich and Trahan discharging into Trahan's right arm.

THE INJURY
The group left the gear and rushed Trahan to the hospital where Dr. Henry J. Kauffman III performed surgery removing one inch of the right triceps muscle and closing the wound. Trahan remained in the hospital three days and returned to his employment as an insurance agent about a week later. Trahan was released from Dr. Kaufmann's care after approximately one month. He sought no further medical treatment for almost four years.
Trahan later began to experience loss of strength in his right arm and swelling with severe throbbing pain when he used the arm. He sought treatment from Dr. Weston Miller, a vascular surgeon. Dr. Miller described Trahan's condition as a return flow occlusion of the blood and body fluids. The shortened triceps muscle caused the remaining musculature to perform differently to compensate, causing pain in addition to "back flow" pressure at the wrist. Dr. Miller and Dr. Thomas LaBorde concluded that the shotgun blast had caused permanent nerve damage. These factors contributed to an entrapment of the median nerve creating a carpal tunnel syndrome.
*494 There is a possibility that the condition can be addressed surgically, however, Dr. Miller opined that even surgery would not be likely to provide total relief. Ultimately, Dr. Miller concluded that Trahan's condition was deteriorating and that using the arm aggravates the condition.

EDUCATION AND EMPLOYMENT
Trahan attended McNeese for one year and USL for two years, studying business. His first employment was as a lineman for SLEMCO, where he worked for three years. He then worked in the family furniture business for a short time. Later he worked as a car salesman for five years. He left that job to start Bayou Air Conditioning and Electric, of which he was part owner for five years. When Trahan sold his interest, a noncompetition agreement forbid him from working as an electrician for five years. At the time of the accident, Trahan was working as an insurance agent. He had held the position for less than a year prior to the accident, and he left that job several months after the accident for unrelated reasons.
After leaving the insurance business, Trahan worked as an electrician for SECO Industries as a self-employed electrician and as an electrician for Acadian Contractors. During this period, he alleges his disability began to surface and ultimately cost him the jobs at SECO and Acadian. The employment records indicate Trahan was a good employee who was merely released when a contract ended or when there was a reduction in force.

ACTION OF THE TRIAL COURT
The trial court concluded that plaintiffs had established liability under three out of the four theories expressed in Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986): 1) that the gun was defective per se, 2) that the three tests of the defective design theory had been established, and 3) that the defendant had failed to warn the plaintiff of the defect. In addition, the court found that the shotgun was uncocked when dropped, and that an unknown and undeterminable blow caused a defective trigger pin to fire. Samuel Trahan was awarded $125,000.00 in general damages, $11,819.65 in past and future medical expenses, and $150,000.00 in loss of earning capacity.
The court also applied comparative fault principles and found Trahan to be 25% at fault in causing the accident. He also awarded Trahan's wife $10,000.00 and his two sons $5,000.00 each for loss of consortium. In addition, under a theory of redhibition, the court awarded Trahan $75,000.00 in attorney fees.
The original judgment failed to award expert witness fees and the trial court remedied this by amended judgment. The only expert fee award at issue is a $2,000.00 fee for Stanton Berg.
All parties lodged appeals citing a total of fifteen assignments of error. We have consolidated the assignments to six for our discussion.

COMPARATIVE FAULT
Both parties allege error on the part of the trial court in regard to the issue of comparative fault. SAIL argues that the trial court failed to properly weigh the physical evidence in determining that the shotgun hammer was not cocked at the time of the accident. Therefore, SAIL contends that the trial court erred in finding Trahan only 25% at fault. Trahan, on the other hand, contends that the trial court committed legal error by applying comparative fault in this case.
The appellate jurisdiction of a court of appeal extends to issues of both law and fact. La. Const. art. V, § 10. However, it is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989).
*495 SAIL's first contention disputes the trial court's factual finding that the shotgun was not cocked at the time of the accident. Both parties presented expert witnesses, and the Trahans testified with regard to the issue of whether the shotgun was cocked or not. The evidence presented by the parties is conflicting. We have reviewed the record and find no manifest error in the trial court's determination that the shotgun was not cocked at the time of the accident. Accordingly, this assignment has no merit.
We now turn to the issue of comparative fault. SAIL contends that the trial court committed manifest error by only assigning 25% fault to Trahan. Trahan responds by arguing that the trial court erred in applying comparative fault in these circumstances.
The issue of whether comparative fault should be applied in strict liability cases was first addressed in Bell v. Jet Wheel Blast, Div. of Ervin Industries, 462 So.2d 166 (La.1985). In Bell, the court concluded that comparative fault may be applied in certain categories of cases to reduce the plaintiff's recovery. The determination of its applicability is to be made on a case by case basis. Id. The court stated in Bell:
Where the threat of a reduction in recovery will provide consumers with an incentive to use a product carefully, without exacting an inordinate sacrifice of other interests, comparative principles should be applied for the sake of accident prevention. The recovery of a plaintiff who has been injured by a defective product should not be reduced, however, in those type of cases in which it does not serve realistically to promote careful product use or where it drastically reduces the manufacturer's incentive to make a safer product.
Id. at 171-172.
Furthermore, as a threshold requirement, a plaintiff must be found partially at fault in causing the resulting harm before the application of this doctrine can be considered to reduce a damage award. Landry v. State, 495 So.2d 1284 (La.1986). Finally, our review of the jurisprudence indicates that the determination of whether comparative fault is applicable to a particular case has always been made by the trial or appellate court. See Landry, 495 So.2d 1284. This determination is, therefore, a legal question to be decided by the court. Falgoust v. Richardson Industries, Inc., 552 So.2d 1348 (La.App. 5 Cir.1989), writ denied, 558 So.2d 1126 (La. 1990).
After careful review of the jurisprudence and record, we find the trial court erred in applying comparative fault principles to this case. As noted by the plaintiff, comparative fault is an affirmative defense. As such, the party asserting the defense bears the burden of proving by a preponderance of the evidence that the negligence of the other party was a cause in fact of the accident. Branch v. City of Lafayette, 95-298 (La.App. 3 Cir. 10/4/95); 663 So.2d 216.
The trial court found that Trahan had violated the standard of care by lifting his son over the loaded gun lying across the top of the duck blind. We do not dispute that finding. However, that is merely the first step in the analysis. In order to sustain an affirmative defense, SAIL must prove a causal link between Trahan's conduct and the harm sustained by a preponderance of the evidence. We find that SAIL failed to carry this burden.
SAIL's own expert testified that the shotgun should have survived a fall of five feet without discharging. The shotgun did not fall that distance in this case. Therefore, it follows that Trahan's conduct did not cause the accident. The defective hammer mechanism, which was the only safety device on the shotgun, was designed specifically to address the danger of discharge when the gun was dropped. Had the hammer not been defective, the accident would not have happened. As noted in Bell, where the asserted negligence of the plaintiff is the very eventuality the safety device was designed to guard against, application of comparative fault is not warranted. Bell, 462 So.2d 166.
Finally, when we apply the policy standards noted in Bell, we must conclude that the trial court erred in applying comparative fault principles. Admittedly, a reduction of award here might induce consumers to use the product more carefully. However, it is even more likely to reduce manufacturers' *496 incentive to produce safer products. This case is a prime example. SAIL's expert, and former employee of the manufacturer, testified that the company had knowledge of the defect as early as 1965, when a doctor whose son was killed in such an accident wrote to inquire as to why it happened. Though the company never warned anyone or recalled the defective shotguns, the very mechanism at issue in this case was redesigned twice. SAIL's expert testified further, that the manufacturer did not even become concerned about this defect until consumers quit taking responsibility for their actions. We agree with the plaintiff that by this statement SAIL's expert is in effect saying "until we started being sued." Under the circumstances it is inappropriate to apply comparative fault principles.

GENERAL DAMAGES
Both parties allege that the trial court's award of general damages in the amount of $125,000.00 is erroneous. Plaintiffs contend the award is abusively low in light of Trahan's permanent disability. SAIL contends that the award is abusively high in light of Trahan's soft tissue injury.
The standard of review for damages was clearly set forth in Youn v. Maritime Overseas Corporation, 623 So.2d 1257, 1260-1261 (La.1993), where the court explained:
In Reck v. Stevens, 373 So.2d 498 (La. 1979), this Court commented on appellate review of general damage awards and on the "much discretion" in fixing damages accorded to trial courts by La.Civ.Code art.1934(3) (1870). [Footnote omitted]. The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
In Reck, this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Idem. Co. Of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974).
After reviewing the evidence both medical and lay, we find that the trial court did not abuse its "much discretion" in awarding general damages in the amount of $125,000.00.

SPECIAL DAMAGES
Both parties allege error on the part of the trial court in its award of $150,000.00 in lost earning capacity. Trahan contends that, the trial court erred in finding that his pre-accident earning capacity was not in excess of $40,000.00, in rejecting the testimony of his expert, and in making such a small award. SAIL argues that the trial court erred in making any award, arguing that plaintiff can earn more post-accident than he did pre-accident.
The manifest error rule governs the review of awards for loss of earning capacity. Detraz v. Hartford Accident & Indemnity Co., 94-708 (La.App. 3 Cir. 12/7/94); 647 So.2d 576. The appellate question is not whether a different award may have been *497 more appropriate, but whether the trial court's award can be reasonably supported by the record. Id.
In the present case, the trial court was presented with conflicting testimony from the economic experts of the parties. Ultimately, the court concluded that neither expert's testimony was sufficiently supported by the evidence and rejected both. Instead, the trial court looked to the evidence concerning Trahan's past employment as well as his current employment and other employment for which he was qualified. Apparently, significant in the court's finding was the fact that Trahan had used his electrician work to supplement his income when he was engaged in other employment. Based on this information the trial court concluded that because Trahan could no longer be an electrician, he would no longer be able to supplement his income from other sources. Accordingly, he arrived at the figure of $150,000.00 to compensate Trahan for the supplemental income he can no longer earn. The award also is reflective of the trial court's finding that Trahan is currently underemployed based on his qualifications and available employment opportunities.
Accordingly, we find that the trial court's award of $150,000.00 for loss of earning capacity is reasonably supported by the record. Therefore, the assignments of error as alleged by the parties have no merit.

INSURANCE POLICY/RETAINED LIMIT
Trahan asserts that the trial court erred in allowing SAIL to argue contract defenses after trial and in sustaining said defenses. The crux of Trahan's argument is that the retained limit provision of SAIL's policy is an exclusion and, therefore, is an affirmative defense which SAIL was required to raise in pleadings. The trial judge found that the provision was a policy provision limiting coverage and that it was sufficiently proven by SAIL's pleading the policy in its answer and introducing the policy at trial. We agree with the trial court's assessment.
Trahan further argues that the trial court's ruling is a denial of due process because he was unprepared to defend this late defense. This argument is specious and offends the court. The record clearly indicates that Trahan was aware of this defense very early in the proceedings and in fact entered his own defense regarding the retained limit. This argument has no merit.
SAIL contends that the trial court erred in grouping the loss of consortium claims of Trahan's wife and children under the same self-insured retention applied to his injury, in contravention of the clear policy language. We agree.
An insurance contract has the effect of law between the parties, and the insurer has the right to limit terms and conditions of its coverage as it sees fit. La.Civ.C. art. 1983; Ledbetter v. Concord General Corp., 95-809 (La.1/6/96); 665 So.2d 1166. Section IV of SAIL's policy sets forth its policy conditions. Paragraph 21 of that section outlines coverage for multiple plaintiffs, or batch claims. The policy provides:
where a series of an/or (sic) several claims are made which are attributable directly or indirectly to the same event, condition, cause, defect or hazard or alleged defect or hazard or failure or alleged failure to warn of such, each and every one of such claims shall be deemed to be separate and distinct from each and every other one of such claims and shall be treated as a separate and distinct claims occurrence from each and every other one of such claims irrespective of the period or area over which the claims occur or the number of such claims.
(emphasis added)
The Self Insured Retention section of the policy provides:
The Retained Limit is the amount set forth under Item 4 of the Policy Declarations and shall apply to each claim.
(emphasis added)
The trial court held that loss of consortium claims are derivative and cumulated them with the injury claim under one self-insured retention of $100,000.00. While we agree that loss of consortium claims are derivative, we cannot agree with the trial court's ruling.
*498 It is clear that the language of the policy referring to claims "attributable directly or indirectly" specifically addresses such derivative claims. There is no legal prohibition to the parties confecting an insurance contract in this manner and, therefore, the policy language has the effect of law between the parties. Accordingly, a separate self-insured retention applies to Trahan's injury claim and to each of the loss of consortium claims on behalf of his wife and children respectively. The trial court's ruling to the contrary is erroneous.
SAIL also contends that the trial court erred in awarding Brett Trahan $5000.00 in damages for loss of consortium when he was never a party plaintiff to the action. We need not address this issue as our application of the $100,000.00 self-insured retention renders the issue moot.

EXPERT WITNESS FEES
Trahan next contends that the trial court abused its discretion in awarding only $2,000.00 in expert fees for the service of Stanton Berg, where SAIL was engaged in attempts to create alternative theories which required constant consultation with Berg and additional scientific testing.
The trial judge has great discretion in awarding costs including expert witness fees, deposition costs, exhibit costs and related expenses. Boutte v. Nissan Motor Corp., 94-1470 (La.App. 3 Cir. 9/13/95); 663 So.2d 154. The trial judge is not required to set an expert witness fee at the amount charged by the expert witness. Veuleman v. Sims, 382 So.2d 245 (La.App. 3 Cir.1980).
Trahan's arguments regarding expert witness fees are unconvincing. Admittedly, the fee awarded Mr. Berg is lower than that charged. Perhaps the trial judge determined that the plaintiff and his expert should have contemplated possible alternative theories prior to trial and thereby reduced his overall charges. Or perhaps, the court determined that the expertise demonstrated did not warrant the fee. Whatever the reasoning behind the court's award, we find no abuse of discretion. This assignment has no merit.

ATTORNEY FEES
SAIL argues that the trial court erred in awarding plaintiff damages and attorney fees in redhibition when he was not the purchaser of the gun and when he did not prove the amount of attorney fee expense. Trahan counters by alleging he is entitled to additional attorney fees for the prosecution of this appeal.
It is well settled in Louisiana that attorney fees are not allowed except where authorized by statute or contract. Quealy v. Paine, Webber, Jackson & Curtis, Inc. 475 So.2d 756 (La.1985). Attorney fees statutes must be construed strictly because the award of attorney fees is exceptional and penal in nature. Cracco v. Barras, 520 So.2d 371 (La.1988). In this case, the trial court relied on La.Civ.Code art. 2545 to support the award of attorney fees. At the time of the accident in this case, La.Civ.Code art. 2545 provided:
The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages.
(emphasis added)
The current article, amended in 1995, is substantively identical in providing that the seller is "liable to the buyer" for attorney fees.
The essence of SAIL's argument is that no privity of contract exists between Trahan and Savage and, therefore, Trahan has no action in redhibition. The fact that Trahan's father was the purchaser of the shotgun is not disputed by the parties. Instead, Trahan argues that he received the shotgun as a gift and as donee is subrogated to his father's rights in redhibition.
It is important to note that there are two types of privity of contract. Vertical privity, or privity up from the purchaser to the manufacturer, was not required under the law at the time of the accident. Rey v. Cuccia, 298 So.2d 840 (La.1974); Frank L. Maraist & Thomas C. Galligan, Louisiana *499 Tort Law (1996). Whether, horizontal privity or privity "down" or "sideways" beyond the purchaser was required is a murkier issue. Maraist & Galligan, supra. It is into this murk that we must now delve.
The supreme court in Cartwright v. Chrysler Corp. et al, 255 La. 597, 232 So.2d 285 (1970), addressed the issue as follows:
While there are numerous appellate court decisions providing "A manufacture or seller of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part sustains an injury caused by a defect in the design or manufacture of the article, if the injury might have been reasonably anticipated," (footnote omitted) the fact remains that such action is one in tort and not in contract.
(emphasis added)
In Cole v. City of West Lake, 517 So.2d 928 (La.App. 3 Cir.1987), we held that a party who was not a purchaser of the product could not collect attorney fees in redhibition. See also Cashio v. Kojis & Sons Signs, 568 So.2d 1388 (La.App. 1 Cir.1990), writ denied, 572 So.2d 47 (La.1991). Trahan attempts to distinguish these cases on the basis that neither injured party was the owner of the property. We do not find this distinction persuasive.
The inescapable fact in this case is that under, La.Civ.Code art. 2545, the seller is liable to the buyer for attorney fees. While we agree that the distinction between Trahan as a donee of the buyer and an actual buyer is superficial, the legislature had not addressed the issue at the time of the accident and did not do so in the 1995 amendment to article 2545. Until the legislature does address the issue, we are constrained to apply the law as written.
The supreme court's analysis in Cartwright is likewise dispositive of this issue. Trahan's right to recover for personal injuries caused by the defect in the shotgun arises under La.Civ.Code art. 2315 et. seq., which do not provide for the recovery of attorney fees. Philippe v. Browning Arms Co., 395 So.2d 310 (La.1980); Reeves v. Great Atlantic & Pacific Tea Co., 370 So.2d 202 (La.App. 3 Cir.1979), writs denied, 371 So.2d 835 (La. 1979), 372 So.2d 568 (La.1979); Gordon v. General Motors Corporation, 323 So.2d 496 (La.App. 3 Cir.1975).
Accordingly, the trial judge erred in awarding attorney fees in this case. Our disposition of this issue renders Trahan's assignment of error requesting an increase in attorney fees moot. Likewise, we need not reach SAIL's final assignment alleging that attorney fees are not recoverable under its policy.

CONCLUSION
For the foregoing reasons the judgment of the trial court is reversed insofar as it:
1) applies comparative fault principles to find Trahan 25% at fault in causing the accident;
2) lumps the separate loss of consortium claims of Trahan's wife and children together with each other and his personal injury claim under one self insured retention of $100,000.00; and,
3) awards attorney fees of $75,000.00 where Trahan has no action in redhibition.
In all other respects the judgment of the trial court is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
AMY, J., concurs.