# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-0770

**ANTHONY "RICKY" DEVILLIER, ET AL.**

**VERSUS**

**ALPINE EXPLORATION COMPANIES, INC., ET AL.**

************

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. LANDRY, NO. 05-C-0896-A
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

************

**JIMMIE C. PETERS**
**JUDGE**

************

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Michael G. Sullivan, Judges.

**REVERSED AND REMANDED.**

**Dennis J. Vidrine**
**Attorney at Law**
**711 W. Pinhook**
**Lafayette, LA 70503**
**(337) 233-5195**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
      **Petroleum Engineers, Inc. and Ray Hodge**

**Robert M. Kallam**
**Jennifer A. Wells**
**Preis & Roy**
**Post Office Drawer 94-C**
**Lafayette, LA 70509**
**(337) 237-6062**
**COUNSEL FOR THIRD-PARTY DEFENDANT/APPELLEE:**
      **Evanston Insurance Company**

PETERS, J.

This appeal is from a judgment interpreting insurance coverage. The issue is whether a Self-Insured Retention (SIR) of $100,000.00 provided in an endorsement to a liability policy issued by Evanston Insurance Company (Evanston) applies once to each individual claim of every claimant arising from an occurrence or only once to the occurrence regardless of the number of individual claims or claimants. Interpreting the policy language, the trial court rendered a partial summary judgment ruling that the SIR was applicable to each individual claim and every claimant. The third-party petitioners affected by the ruling, Petroleum Engineers, Inc., Petroleum Engineers International, Inc., and Ray Hodge (collectively "Petroleum"), appealed.[1] Of crucial importance in the determination of the issue is the policy's definition of the word "claim." We find that, as applied to the SIR in this case, the definition raises an ambiguity which by settled rules of interpretation must be resolved against the insurer. Accordingly, we reverse and remand for further proceedings.

## DISCUSSION OF THE RECORD

An oil well experienced a hydrocarbon blowout in Jefferson Parish on February 28, 2004. As a result, a number of lawsuits for personal injuries and property damages were filed.[2] The plaintiffs in the present action, Anthony Devillier and his wife, filed one of those suits naming Petroleum and other parties as defendants. In that suit, Mr. Devillier sued for his personal injuries and his wife filed a claim for loss of consortium.

Petroleum filed a third-party demand in the Devillier suit against its insurer, Evanston, which issued Commercial General Liability Policy #03PKG00694 insuring

_____

[1]The trial court certified that the partial summary judgment was final for purposes of appeal, as authorized by La.Code Civ.P. art. 1915 .

[2]Several hundred plaintiffs were involved in the various suits.

Petroleum from 6/25/2003 to 6/30/2004. The policy contains five coverage parts, only three of which are involved in any way in this case. Part A covers Commercial General Liability, Part D covers Contractors Pollution Liability, and a "claims-made" part covers Professional Liability. The parties agree that Part D, the Contractors Pollution Liability Coverage, is specifically applicable to this case. The policy also contains an SIR Endorsement affecting all three of the above parts, and that endorsement is the focus of the present controversy.

Petroleum sought a partial summary judgment and declaratory order regarding the SIR coverage. Petroleum contended that only one SIR of $100,000.00 was applicable to the blowout, or pollution condition,[3] and that the SIR was not applicable to each separate claim asserted by the multiple plaintiffs. Its contention was that, once it met its obligation of investigation, defense, and payment of any claim in the amount of $100,000.00, the insurer was obligated for the balance of the loss no matter the number of claims or claimants. Evanston filed a cross-motion putting at issue the same coverage dispute. Evanston contended that the SIR of $100,000.00 applied "per claim," meaning to each claimant as a separate claim, and that until the SIR was exhausted as to each it had no obligation to defend.

The trial court denied Petroleum's motion and granted Evanston's. The court found that the policy was clear and rendered judgment holding that "this $100,000 'per claim' self-insured retention must be satisfied per each individual claimant (i.e., not per occurrence and not per lawsuit)."

The judgment dismissed Petroleum's third-party petition "without prejudice to [the third-party plaintiff's] rights to reassert the Third-Party Demand once the

---

[3]By definition in the policy, a "pollution condition" is an occurrence.

2

$100,000 per claimant self-insured retention is exhausted for each individual claimant."[4]

On this appeal, Petroleum assigns error to the holding that the policy was free of ambiguity as well as the holding that the SIR applied to each individual claim and claimant, and not to the "occurrence" or "pollution condition."

## OPINION

Appellate courts review grants of summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, that is, whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Ocean Energy, Inc. v. Plaquemines Parish Gov't*, 04-66 (La. 7/6/04), 880 So.2d 1. Both sides agree that the coverage issue is a matter of interpretation of the policy. Both sides agree that, if there is ambiguity in the policy regarding the issue before us, the insured wins. Whether or not a policy is ambiguous is a question of law. *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-911 (La. 1/14/94), 630 So.2d 759.

The Commercial General Liability Coverage definitions are specifically made applicable to the Contractors Pollution Liability Coverage Endorsement. The policy states that "words and phrases that appear in quotation marks have special meaning." The definitions appear in quotation marks.

---

[4]The summary judgment rendered by the trial court was arguably inappropriate because there was no evidence that Petroleum, the insured, had satisfied an SIR of $100,000.00. Until Petroleum satisfied its deductible, or retention obligation, coverage under Evanston's insurance was not triggered, and the judgment in favor of Evanston could technically be affirmed for that reason. Evanston makes that point in its brief. However, the ultimate issue both the insured and the insurer wanted resolved by the cross-motions was how the SIR amount would apply. That issue was reached and decided by the trial court. Thus, whether the judgment is called a summary judgment or a declaratory order, by either name it decided the issue the parties wanted resolved and did so by use of the procedural device they chose as the vehicle for seeking that resolution. That being the case, and guided by the liberal construction precept of La.Code Civ.P. art. 5051, we recognize the subject matter as appropriately resolved by summary judgment.

The definition of "'occurrence'" is as follows:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The Contractors Pollution Liability Coverage Endorsement adds the definition of "'Claim' or 'Claims,'" "'Pollution Condition,'" and "'Pollutants'" as follows:

"Claim" or "Claims" means a request or a demand received by you or the Company for money or services, including the institution of "suit" or arbitration proceedings against you, seeking damages.

"Pollution Condition" means the discharge, dispersal, seepage, migration, release or escape of "pollutants".

"Pollutants" means any solid, liquid, gaseous, thermal, biological or radioactive substance, material, matter, irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste.

The insuring agreement in the Commercial General Liability section provides that the amount the insurer will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III). Under that Section is the following:

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay, regardless of the number of:

    . . . .

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits".

The parties agree that this case presents the situation where there is a commercial general liability policy with separate coverage parts provided by an endorsement. There are two endorsements to the policy that are applicable to the present dispute. The first is the Contractors Pollution Liability Coverage Endorsement.

4

The insuring agreement for the Contractors Pollution Liability Coverage Endorsement contains the following language:

> b.  This insurance applies to "bodily injury" and "property damage" only if:
>
>> (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" resulting in a "pollution condition" . . . .

It also provides: "We may, at our discretion, investigate any 'occurrence' and settle any 'claim' or 'suit' that may result." It includes the same limits of insurance provision as quoted above regarding the number of claims made or suits brought or persons or organizations making claims or bringing suits.

Paragraph 10 of the Limits of Insurance section of the Contractors Pollution Liability Coverage Endorsement provides:

> 10.  The Deductible[5] amount stated on the Declarations is applicable to each "claim" and each "pollution condition", applies once to each "claim" and each "pollution condition" and can be applied either for defense expenses, settlement, compromise or indemnification.

This paragraph comprised of a single sentence is a key provision in the policy. The parallel structures in Paragraph 10 emphasize the equal importance of "claim" and "pollution condition" in the sentence. The deductible (SIR) is made applicable once to each. Literally, the sentence, standing alone and without reference to other provisions in the policy, is applicable to this insurance only in the limited circumstance when there is one pollution condition and but one claim arising from that pollution condition. If in Paragraph 10 "claim" is singular, i.e., if it refers only to a single cause of action asserted by a single claimant, an irreconcilable ambiguity

_____

[5]The trial court found and the parties agreed that in this case "deductible" and "retention" are synonymous terms.

5

exists when there are multiple claims arising from one pollution condition. However, all parts of the contract must be considered. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050. We will later relate Paragraph 10 to other parts of the policy, bearing in mind that the policy directs us to give "special meaning" to definitions of words and phrases in quotation marks.

The second endorsement applicable to the present dispute is the Self-Insured Retention Endorsement. The SIR Endorsement begins with this language:

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**

Following this list identifying the four coverage parts being modified, the endorsement then states that "[t]he total limit of liability of the Company as stated in the policy declarations shall apply excess of the retained limit (herein called the Self-Insured Retention) as stated in the endorsement, and the Named Insured agrees to assume this retained limit . . . ." The printed form of the endorsement has spaces provided for insertion of specific information, and in those spaces are inserted abbreviated references to three coverages and the self-insured retention the named insured agreed to assume. For Commercial General Liability, it is "$25,000 per claim"; for Contractors Pollution Liability, the amount is "$100,000 per claim"; and, for Professional Liability, it is "$100,000 per claim." Thus, the Contractors Pollution

6

Liability coverage [6] is subject to a $100,000.00 "per claim" SIR Endorsement having no annual aggregate retention.

The issue in this case is the meaning of "per claim." Evanston's brief asserts that "per claim" is a term defined in the policy. It is not. Its brief also argues that "per claim" equates to "per person." Nothing in the policy manifests that equation. The pleadings show that the well blowout resulted in a "pollution condition." Applying Paragraph 10 of the Limits of Insurance section of the Contractors Pollution Liability Coverage Endorsement, it is quite clear that there can be but one SIR deductible or retention to one pollution condition. It is equally certain that the same interpretation applies to "claim" in Paragraph 10. We emphasize, however, that the element of uncertainty in this case is the precise definition of "claim." [7]

The word "claim" and the word "claims" are not separately defined in the policy. However, the phrase "'claim' or 'claims'" is defined. The defined words are nouns. One is singular, and the other is plural. Evanston argues that each individual claimant's demand constitutes a separate claim triggering separate retention amounts. However, by definition in the policy the phrase "claim or claims" is used to denote

---

[6] It appears that the wrong SIR Endorsement form was used by the insurer in putting this policy together. The SIR Endorsement form actually used stated it modified four coverages and listed them. We reproduced those four above in boldface. Coverage Part D of the policy is Contractors Pollution Liability Coverage, while the boldface coverage that most nearly corresponds to Part D by name is shown on the form as **OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE**. As demonstrated by other endorsements attached to the policy, these are two separate coverages. Thus, the SIR Endorsement does not expressly modify the Contractors Pollution Liability Coverage; expressly, it modifies Owners and Contractors Protective Liability Coverage, a coverage part not found in the policy in the record. However, despite the apparent use of the wrong SIR Endorsement form, the SIR amount "per claim" written into the blocks farther down in the endorsement does expressly relate to Contractors Pollution Liability. Because it appears that the third-party plaintiff/insured herein agreed that the SIR Endorsement form actually used did in fact modify the coverage, we mention the discrepancy but do not otherwise consider it in the resolution of the coverage issue in this case.

[7] Evanston includes in its brief the observation that the SIR Endorsement provides for $100,000.00 "per claimant." That, too, is a misstatement. The endorsement does not provide for an SIR "per claimant." It provides for an SIR "per claim."

either a singular "claim" or plural "claims." Both words have the same definition, and no distinction is made between the application of the singular and the plural. The word "or" is a coordinating conjunction which joins words of equal grammatical rank. See Winifred Bryan Horner, et al., <u>Harbrace College Handbook</u>, 16 (12th ed., Harcourt Brace & Co. 1994). "Claims," like "claim," as defined, means a request or a demand for money or services and includes the institution of suit. A suit making a request or a demand for money or services may be instituted by many claimants or by one. If "per claim" in the SIR Endorsement unambiguously refers to a single claim, as argued by Evanston, then the addition of "or 'claims'" in the definitional phrase "'claim' or 'claims'" is meaningless. We cannot ignore its own language written into the policy by the insurer. Evanston's brief argues that "each individual person or entity and their assertion(s) of damages is considered a separate and distinct "claim" as that phrase is used in the contract." However, that phrase as used in the contract equates "claims" with "claim." By treating "claim" or "claims" as being the same with no distinction between the singular and the plural, the phrase "per claim" can just as well be rendered "per claims."

Additionally, the SIR Endorsement modified the policy with this provision:

3.    In the event of a claim or claims arising which appear likely to exceed the Self-Insured Retention, no costs, other than adjusting expenses, shall be incurred by the Insured without the written consent of the Company[.]

Once more—and this time tellingly in the context of the SIR Endorsement itself—the reference is to "claim or claims," without distinction as to number. If the SIR applies once to each claim, the addition of "or claims" is superfluous. On the other hand, if the SIR applies once to each claim or claims, whether one or many, the application is consistent with the rest of the language in Paragraph 10 of the Limits of Insurance,

8

which states that the deductible is applicable to each "pollution condition" and applies once to each "pollution condition."

Both parties in this case argue the same three cases dealing with SIR coverages: *Trahan v. Savage Industries, Inc.*, 96-1239 (La.App. 3 Cir. 3/5/97), 692 So.2d 490, *writs denied*, 97-1636, 97-1652 (La. 10/3/97), 701 So.2d 207, 209; *Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339 (5th Cir. 2003), *cert. denied*, 540 U.S. 1110, 124 S.Ct. 1078 (2004); and *Maxim Manufacturing Corp. v. Alliance General Insurance Co.*, 911 F.Supp. 239 (S.D. Miss. 1995).

In *Trahan*, 692 So.2d 490, the plaintiff sued for his personal injuries, and his wife and children made loss of consortium claims. The bankrupt defendant had an SIR policy. The trial court cumulated the loss of consortium claims with the injury claim under one SIR of $100,000.00. We reversed that ruling, finding that the clear policy language did not permit grouping the loss of consortium claims of Trahan's wife and children under the same SIR applied to his injury. We noted that the SIR section of the policy provided that "'[t]he Retained Limit is the amount set forth under Item 4 of the Policy Declarations and **shall apply to each claim**.'" *Id.* at 497. We then quoted the applicable policy provision:

> where a series of an/or (sic) several claims are made which are attributable directly or **indirectly** to the same event, condition, cause, defect or hazard or alleged defect or hazard or failure or alleged failure to warn of such, each and every one of such claims **shall be deemed to be separate and distinct from each and every other one of such claims and shall be treated as a separate and distinct claims occurrence from each and every one of such claims** irrespective of the period or area over which the claims occur or the number of such claims.

*Id.*

9

This specific policy language caused this circuit in *Trahan* to conclude that a separate SIR applied to the plaintiff's injury claim and to each of the loss of consortium claims on behalf of his wife and children respectively. No such clarifying language appears in the present policy distinguishing one claim from multiple claims arising from the same pollution condition.

In *Musmeci*, 332 F.3d 339, 352, the SIR provision contained only one line providing, "'$250,000 each claim.'" The word "claim" was not defined in the policy. However, the court found that the meaning of the word "claim" for purposes of the SIR provision could be gleaned by reference to the use of the word in numerous other provisions in the policy. The court then found that its meaning was clear and unambiguous and that a "claim" was the assertion of a legal right against the insured by a third party. The distinction between the policy in *Musmeci* and the present case is that in *Musmeci* "claim" was not defined and it was used always in the singular, while in the present case the singular "claim" and plural "claims" are defined in the policy and mean the same thing.

In *Maxim*, 911 F.Supp. 239, two children died as a result of a defective heater. The SIR Endorsement in the manufacturer/insured's liability policy stated: "'The retention amount will apply on an each claim basis regardless of the number of claims arising out of one occurrence.'" *Id.* at 239. The coverage dispute was whether a suit brought by the father of the two children constituted one claim under the policy or two. The decision did not indicate whether or not the word "claim" was defined in the policy, but the court found that the only result it could reach under any reasonable interpretation of the word "claim" was that the word was unambiguous, and in that case there were two causes of action, two claims, and two retentions. The distinction

10

between *Maxim* and our present case is the same as that we just described with *Musmeci*.

An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. "Ambiguous policy provisions generally are to be construed against the insurer and in favor of coverage." *Carrier v. Reliance Ins. Co.*, 99-2573, p. 12 (La. 4/11/00), 759 So.2d 37, 43. "[E]quivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer." *Id.* While Evanston recognizes this rule, it invokes the equally settled rule that, for strict construction to apply, the insurance policy must not only be susceptible to two or more interpretations, but also each of the alternative interpretations must be reasonable. That is surely the law, but in the present case an interpretation favoring only one retention for whatever claims might be asserted for one pollution condition is a reasonable interpretation based on the policy language. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045; *see also Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03), 848 So.2d 577. This policy is ambiguous and must be interpreted against the party who furnished its text. *See* La.Civ.Code art. 2056.

The trial court's grant of summary judgment in favor of Evanston Insurance Company was based on its finding that there was no ambiguity in the policy and its finding that there was no coverage for more than one retention for this pollution condition. Based on our *de novo* review of the policy language, we find that the policy's SIR coverage language was ambiguous. Consequently, the ruling was error as a matter of law. We will reverse the judgment and remand the third-party demand for further proceedings.

11

## DISPOSITION

For the reasons assigned, we reverse the judgment of the trial court and remand the third-party demand of Petroleum for further proceedings. Costs of this appeal will be borne by Evanston Insurance Company.

**REVERSED AND REMANDED.**